DAVID B. KAPLUS, INC., PLAINTIFF-APPELLANT, v. THE HOME INSURANCE COMPANY, NEW YORK, N. Y., DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 18, 1953—Decided June 8, 1953.

164

Before Judges EASTWOOD, BIGELOW and JAYNE.

*Mr. Louis K. Press* argued the cause for the appellant (*Mr. Charles A. Winkelried*, on the brief).

*Mr. Samuel A. Gennet* argued the cause for the respondent.

The opinion of the court was delivered by

BIGELOW, J. A. D. This is an action on a contract whereby the defendant insured the plaintiff against loss by theft. While the policy was in force, 20 motor pumps were stolen from the plaintiff. The only question is whether the pumps were covered by the policy. The learned county judge, who heard the case without a jury, decided the question in the negative and rendered judgment for the defendant.

The policy was what is known as an automobile dealer's open policy. It "covers automobiles owned by the Insured and held for sale." The policy contains the following important provision:

"10. Automobile Defined; Trailers; Two or More Automobiles: Except where specifically stated to the contrary, the word 'automobile' wherever used in this policy shall mean the motor vehicle, trailer or semi-trailer described in this policy. The word 'automobile' shall also include its equipment and other equipment permanently attached thereto. The word 'trailer' shall include semi-trailer. When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each and a motor vehicle and a trailer or trailers attached thereto shall be held to

be separate automobiles as respects limits of liability, including any deductible provisions."

The plaintiff bought 73 tank trailers in July 1947, and 41 more of the same model in February 1948. The theft occurred three years later, March 27, 1951. Each trailer, when it reached plaintiff's place of business, was equipped with a pump in order to pump the liquid which the tank was intended to carry, into or out of the tank. The pump was fastened by a latch upon a base in the rear compartment of the tank trailer. As soon as the tanks were delivered to the plaintiff, he removed the pumps from the tanks and put them in a storage van on the premises. In the interval between the purchase and the theft, the plaintiff sold all the tank trailers except 16 and all the pumps except 21. Generally, when he sold a trailer he had a mechanic get one of the pumps and fasten it in place in the rear compartment. But a few trailers were sold without pumps— "might be eight, ten or fifteen."

It is clear that if the plaintiff had bought no trailers but only the pumps, they would not have been "equipment" covered by the policy even though the pumps were designed especially for use in tank trailers, and were held by plaintiff for resale for that use. The primary subject of the insurance was motor vehicles and trailers; equipment was not included unless it was equipment of a particular vehicle which was covered by the policy. It is equally clear that if plaintiff had not taken the pumps out of the trailers and if the thief had found them, each in place in its trailer, and thence had stolen them, they would be deemed equipment covered by the policy—comparable to a fire extinguisher in its bracket, or a radio or clock set in the dashboard.

But the plaintiff did take the pumps out of the trailers and locked them up in the storeroom. If the separation of a certain pump from its particular trailer can be regarded as temporary; if, in the usual course of business, upon the sale of that trailer, that pump and no other would be reinstalled and sold with it; if, in fine, the one is still part of the equipment of the other, it is covered by the policy.

Otherwise it is not covered. See *Steiker v. Phila. Natl. Ins. Co.*, 7 *N. J.* 159 (1951). Certainly four or five of the pumps stolen from plaintiff were not equipment of any trailer, for he then had 21 pumps (of which 20 were stolen) and only 16 trailers. And we are convinced that the other 15 or 16 pumps which were stolen were not held by plaintiff each for its particular trailer. When a trailer was sold, the buyer generally wanted a pump also and plaintiff supplied it from his stock of pumps, indifferent whether or not that pump had originally been removed from that trailer. He had no reason for a different practice.

We are satisfied that the judgment is correct. Affirmed.